UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RAEGINA A. HEALY,                    :

                                            :

                Plaintiff,          :               **<u>DECISION & ORDER</u>**

                                            :

               -against-           :               02-CV-1061 (DLI)(JO)

                                            :

JZANUS LTD.,                  :

                                          :

                   Defendant.     :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Presently before the court is defendant's motion for summary judgment dismissing the instant complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA" or "the Act").[1] Plaintiff, Raegina A. Healy ("plaintiff"), alleges that defendant, Jzanus Ltd., ("defendant" or "Jzanus") violated three sections of the FDCPA when defendant sent plaintiff a letter in connection with a debt she owed. Defendant asserts that summary judgment is proper because the FDCPA is inapplicable to the letter in question. Alternatively, defendant argues that even if the FDCPA does apply, the letter does not violate the Act. For the following reasons, defendant's motion for summary judgment is granted.

**Background**

Defendant is a corporation of approximately 166 employees with principal offices in Floral Park, New York. Defendant provides a range of financial services to health care providers in the New York City area, including assisting hospitals with obtaining payments from insurers to cover

---

[1] By letter dated June 16, 2004, and in contravention of this court's local rules pertaining to proper motion practice, *see* Local Civ. R. 6.1, plaintiff moved to strike the affidavits of Joseph Caraccia, Bruce Bernfeld, and Gail Spiro filed by defendant in support of its motion for summary judgment. Plaintiff's counsel not only failed to properly file this motion, he also conceded that he did in fact receive notice of these witnesses and chose not to depose them. Accordingly, this motion to strike is denied. (Transcript of the oral argument held on March 22, 2006 at 37.)

the costs of patients' treatment.  Among the services it provides to hospitals, defendant acts as a licensed debt collector.[2]  Medicaid Recovery Services ("MRS") is an unincorporated division of defendant, Jzanus, Ltd.  However, MRS is not licensed by the New York City Department of Consumer Affairs to collect debts.

On January 6, 2001, plaintiff received medical services at Maimonides Medical Center ("Maimonides").  Upon her admission, plaintiff signed a document entitled "Financial Agreement, Assignment of Benefits & Release of Information" ("Patient Agreement").  This document states, in part, that plaintiff "will pay the entire remaining balance immediately upon notification by the Medical Center . . . in the event that these services are not paid in whole or in part by the insurance carrier, or other third party payor."  Plaintiff was discharged from Maimonides on January 9, 2001.  In her deposition, plaintiff stated that when she left the hospital in January 2001, it was her understanding that Medicaid, Medicare or Healthfirst was going to pay for her hospitalization.[3] Following plaintiff's admission to Maimonides on January 6, 2001 and at all times prior to December 13, 2001, Maimonides listed the "Patient Balance" for her account as $0.00.  During that time period, Maimonides did not send plaintiff an invoice for payment.

About six months later, in June of 2001, plaintiff received a letter ("June Letter") from MRS.  The June Letter stated that a balance of $12,000 existed for services rendered by Maimonides on January 6, 2001.  The June Letter stated in part:

> Our office represents the above-mentioned hospital in pursuit of Medicaid coverage for the above patient for their hospitalization.
>
> In order to complete this Medicaid application, additional information is necessary.  We need your cooperation in this matter.

---

[2] Defendant, Jzanus, Ltd., is licensed as a debt collector by the New York City Department of Consumer Affairs.  (Bromberg Declaration at Exhibit I.)

[3] In her deposition, plaintiff failed to explain whether "Healthfirst" is an insurance provider.

2

> As the City of New York imposes time limits on these applications,
> it is essential that you contact us immediately.

The June Letter does not contain a demand for payment from plaintiff.  The signature block of the June Letter reads, "Cathy Connolly, Medicaid Investigator."

The June Letter also contains a validation notice which is required by the FDCPA when a debt collector initially communicates with a debtor.  The notice states, in part:

> This is an attempt to collect a debt, and any information obtained will
> be used for that purpose.  This communication is from a debt collector.

This notice is included on the front of the June Letter, below the signature block, and is written entirely in capital letters.  The name Jzanus does not appear on the June Letter.  Further, when calling its customers, defendant's employees admit to making patients believe that they are speaking directly with the hospitals instead of with a debt collector and that they never identify themselves as a representative of MRS or Jzanus.

In December of 2001, MRS succeeded in obtaining Medicaid coverage to pay for the medical expenses plaintiff incurred during her stay at Maimonides.  As a result, plaintiff's original $12,000 debt was reduced to $1,272.  On December 28, 2001, after the Medicaid benefit was credited to plaintiff's account, the remaining balance of $1,272 was classified as patient responsibility and listed in her account records with Maimonides under the category of "Patient Balance."

Plaintiff then brought this action against defendant alleging violations of the FDCPA. Defendant argues that the FDCPA does not apply or alternatively that the June Letter does not violate the Act.  After defendant filed its motion for summary judgment, the court held oral argument on the motion on March 22, 2006.[4]

_____

[4] "Tr. at __" refers to the transcript of the oral argument.

**Discussion**

**I.      Standard for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The court must view all facts in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence."  *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000).  Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

In this case, defendant asserts that summary judgment is proper because the FDCPA is inapplicable to its June Letter.  In opposition, Plaintiff claims summary judgment is unwarranted because the FDCPA applies, as defendant is a self-admitted debt collector attempting to collect a debt.

The FDCPA is a strict liability statute and "a consumer need not show intentional conduct by the debt collector to be entitled to damages."  *Russell v. Equifax*, 74 F.3d 30, 33 (2d Cir. 1996).  Proof of one violation is sufficient to support summary judgment for a plaintiff and there are no non-actionable violations of the statute.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993).  "The most widely accepted test for determining whether a collection letter violates the

4

FDCPA is an objective standard based on the 'least-sophisticated consumer.'" *Colmon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. "While debt collectors are, of course, charged with the duty of collecting debts that they are owed, they may not do so in any manner that prevents consumers from exercising their legal rights." *Russell*, 74 F.3d at 32. Language commonly referred to as a "validation notice" must be included in a debt collection letter to provide the consumer with information necessary to challenge the debt allegedly owed before making payment to an independent collection agency. *See* § 1692g(a). The validation notice must include "the amount of debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Id*.

Defendant argues that the FDCPA should not apply since the debt in question was not "in default" and the June Letter was not sent "in connection with the collection of any debt." The Second Circuit has held that the FDCPA applies when an entity pursuing any outstanding debt is classified as a debt collector and the debt in question is in default. *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86-87 (2d Cir. 2003). However, whether the entity is classified as a debt collector depends on the status of the debt. *Id*. at 86. A debt's status, in turn, is determined by the contractual terms agreed upon by the creditor and the debtor. *Id*. at n. 5.

In this case, the Patient Agreement sets forth, not a period of default, but rather, identifies when a patient's balance "become[s] due":

> I, the patient, and/or the guarantor agree to pay Maimonides Medical Center upon presentation, the full and entire amount of any and all bills which become due for care and treatment rendered to the patient identified on the face of this form in accordance with the prevailing rates and terms of the Maimonides Medical Center.

5

> Benefits, if any, paid by any plan or other insurer, government agency or other third party will be credited on account.  I and /or the guarantor are responsible for any balance remaining.
>
> It is further agreed that in the event that these services are not paid in whole or in part by the insurance carrier, or other third party payor, I and/or guarantor will pay the entire remaining balance immediately upon notification by the Medical Center that the charges or any portion thereof have not been approved for payment.

(Patient Agreement.)

Plaintiff incurred $12,000 in charges for her hospitalization in January of 2001, but the "Patient Balance" on her account was $0.00 at all times prior to December 13, 2001.  During that time period, Maimonides did not send plaintiff an invoice or seek payment from Plaintiff.  These facts are undisputed.

In light of the Patient Agreement and the relevant undisputed facts, plaintiff's debt cannot be considered to have been "in default" for purposes of the FDCPA at the time that MRS sent the June Letter. However, plaintiff argues that defendant's self-identification as a debt collector and its statement in the June Letter that it was attempting to collect a debt are enough to trigger the FDCPA's application.

As previously noted, the June Letter sent by MRS sought information from plaintiff to pursue Medicaid insurance on her behalf: "Our office represents the above-mentioned hospital in pursuit of Medicaid coverage for the above patient for their hospitalization.  In order to complete this Medicaid application, additional information is necessary.  We need your cooperation in this matter."  Immediately following these statements is the FDCPA validation notice, which states, in relevant part: "THIS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR."

In *Alibrandi*, creditor First Union initially retained North Shore Agency to help collect debts owed.  In connection with a debt owed by Alibrandi to First Union, North Shore Agency sent Alibrandi a letter stating that it (North Shore Agency) was a debt collector and warning Alibrandi that "[s]erious collection of your account with our client, First Union National Bank, begins with this letter."  333 F.3d at 83 (alteration in original).  First Union subsequently hired Financial Outsourcing, not as a debt collector, but as a debt service provider for the purpose of reminding account holders that their debts were outstanding.  Financial Outsourcing, unaware of North Shore's initial letter to Alibrandi, sent Alibrandi a letter indicating that Financial Outsourcing was servicing Alibrandi's account and informing him that his debt was not in default.  This letter did not contain a validation notice.  Alibrandi brought an action against Financial Outsourcing, pursuant to the FDCPA, contending that, by failing to include a validation notice in its letter, Financial Outsourcing had violated the FDCPA.

Noting that Congress failed to define the term "default" in FDCPA, the Second Circuit held that "the interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default."  In *Alibrandi*, it appears that "default" had not been defined contractually.  The Second Circuit held that determining whether Alibrandi's debt was in default would require ascertaining the relationship between First Union and North Shore.  If First Union had hired North Shore to "pursue Alibrandi's debt, North Shore's self-identification as a debt collector constituted a declaration by First Union that Alibrandi's debt was in default."  *Alibrandi*, 333 F.3d at 88.  The Second Circuit remanded the case to have the District Court ascertain whether North Shore was hired to service

7

debts or to collect them.  Presumably, if North Shore had been hired to collect debts that had defaulted, then North Shore's self-identification as a debt collector would trigger the FDCPA.

Based on a review of the agreement between Maimonides and Jzanus (Third Party Agreement), it cannot be said that Jzanus was hired to collect debts that were in default.  Instead, it appears from the Third Party Agreement that Jzanus was hired to help Maimonides identify medicaid eligible patients.

Although the Third Party Agreement between Maimonides and Jzanus is referred to and described in defendant's Fed. R. Civ. P. 56 statement of facts, this agreement was not originally made part of the record.  Following the Second Circuit's reasoning in Alibrandi, the court requested, and defense counsel subsequently filed, a copy of the Third Party Agreement between Maimonides and Jzanus.[5]  This simple agreement is in letter form, dated September 29, 1998, and was sent from Maimonides' Interim Director of Patient Accounts to Jzanus' Vice President.  It reads:

> As was discussed with you on the telephone last week, Maimonides Medical Center agrees to forward to Jzanus, Ltd. All our Medicaid PMP accounts.  You have quoted us a fee of 10% for the collection of these accounts.  This will be effective 10/1/98.  Thank you for your cooperation in working with us toward our goal of qualifying potential Medicaid patients for Medicaid coverage.[6]

Letter in response to Court's request, *Healy v. Jzanus Ltd.*, 02-cv-1061 (E.D.N.Y. March 22, 2006).

---

[5] This agreement had previously been turned over to plaintiff.  (Tr. at 46.)  Indeed, plaintiff originally subpoenaed "[a]ll agreements between Maimonides and . . . Jzanus, Ltd." and provided defendant with a copy of the relevant agreement.  (Tr. at 47, 50.)

[6] Pursuant to the court's request, defendant submitted an affidavit by Gail Spiro, an employee in Maimonides' Patient Account department, explaining that the term "PMP" accounts in the Third Party Agreement refers to "Potential Medicaid Patient" accounts.  Aff. in Support at ¶ 2, *Healy v. Jzanus Ltd.*, No. 02-cv-1061 (E.D.N.Y. March 27, 2006).

8

Plaintiff's counsel had in his possession other agreements between Maimonides and Jzanus but failed to produce any other agreement to rebut defendant's contention that the foregoing Third Party Agreement is the sole agreement governing Jzanus' debt servicing activity on behalf of Maimonides.  Therefore, the court finds that the Third Party Agreement is the sole agreement that is relevant to the instant action.

Given that Maimonides clearly retained Jzanus for the purpose of seeking medicaid reimbursement on plaintiff's behalf, Jzanus' self-identification as a debt collector does not render plaintiff's debt in default.  Since plaintiff's debt is not in default, the FDCPA does not apply.

### Conclusion

Based upon the Patient Agreement between plaintiff and Maimonides, plaintiff's debt was not in default at the time that Jzanus sent its June Letter and the FDCPA, therefore, does not apply to the instant case.  Even if the status of plaintiff's debt was unclear at the time Jzanus sent its June Letter, its self-identification as a debt collector did not trigger the FDCPA because Maimonides retained Jzanus for the sole purpose of servicing, rather than collecting, patient accounts.  Having found that the FDCPA does not apply, the court need not consider defendant's alternative argument that the June Letter did not violate the FDCPA.  Accordingly defendant's motion for summary judgment is granted and this action is dismissed.

DATED:     Brooklyn, New York
           March 31, 2006

                                    /s/
                            _____
                            DORA L. IRIZARRY
                            United States District Judge